UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMEL LEON ROBINSON,

                    Plaintiff,                          Case Number 19-10584

v.                                                        Honorable David M. Lawson

MICHIGAN DEPARTMENT OF CORRECTIONS
MEDICAL HEALTH PROVIDERS, HANNA SAAD,
ALEKSANDRA WILANOWSKI, LAURA FRY,              **OPINION AND ORDER**
LAURA HOGAN, RICHARD D. RUSSELL,                  **OF PARTIAL DISMISSAL**
R. HARBOUGH, J. BROWN, JOSHUA A.
BUSKIRK, KATHLEEN M. LEFFINGWELL,
CHRISTINE BLEECHER, CHANDLER
CHEEKS, A. SWISHER, CRESENBERRY, RN,
OFFICER MULLIGAN, OFFICER MYER,
SGT. SCHAFEAR, PC HOWE, OFFICER ADAMS,
OFFICER JACKSON, OFFICER MIMS, OFFICER
WILLIAMSON, WARDEN BUSH, RUM PIERON,
OFFICER DUNCAN, OFFICER BALMES,
DEP. WARDEN B. CARL, RUM WALWORTH,
KIM CARGOR, OFFICER BREWSO, DEREK
ROSEN, JILL LAWRENCE, MARY CLOSSER,
RICHARD BAISH, MICHAEL BENNETT,
LINDA BRESETTE, J. BAKER, HENDRICK, NP,
MARY A. GRATZ, RN, JENNIFER LNU, IRINA
FILKSMAN, TANISHA SMITH-ALLEN,
NICHOLAS MITCHELL, AMY M. LUCHTMAN,
ALISON GIRORD, SUSAN G. SMITH, MARJORIE
NICHOLS, ANGELA CHILDS, MELISSA M.
BERRY, PAIGE E. HILLIER, RN, DIANE J.
MCCREODIE, DA, A. HAWKINS, HUTCHINSON,
CARLA GROWS, RUMBUS, RAYMOND BARNES,
C. OZUKISE, SCOTT KERSTEHER, OFFICER
UNDERWOOD, A. WAHTOLA, WARDEN
ALLEN A., J. RHOADES, D. ADAMS, MARGIE
NICHOLS, CURTINA J. JONES, DEPUTY WARDEN
W. FOY, M. ANDERSON, N. CULBERSON,
WARDEN TOM O'BELL WINN, CLOCK, and
WITMAN,

                    Defendants
_____/

**OPINION AND ORDER OF PARTIAL DISMISSAL**

Before the Court is the plaintiff's *pro se* civil rights complaint filed pursuant to 42 U.S.C. § 1983. Jamel Leon Robinson is a state prisoner currently confined at the Saginaw Correctional Facility in Freeland, Michigan. In his complaint, the plaintiff names over eighty defendants at four different Michigan Department of Corrections locations, all of whom are employed by the MDOC or provide medical or mental health care under contract. The complaint alleges a variety of constitutional injuries. Construed liberally, these claims include coerced and unwanted medical treatment, sexual harassment, racial discrimination, and denial of access to the courts.

Having reviewed the complaint, the Court now dismisses the following defendants, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), for failure to state a claim for which relief may be granted: (5) Richard D. Russell; (6) R. Harbough, RN; (8) Joshua A. Buskirk, PA; (9) Kathleen M. Leffingwell, RN; (13) Cresenberry, RN; (14) Officer Mulligan; (16) Sergeant Schafear; (17) Howe, PC; (23) Pieron, RUM; (25) Officer Duncan; (26) Officer Balmes; (27) Deputy Warden B. Carl; (28) Walworth, RUM; (29) Kim Cargor; (36) Linda Bresette; (37) J. Baker; (41) Irina Filksman; (42) Tanisha Smith-Allen; (43) Nicholas Mitchell; (48) Angela Childs; (49) Melissa M. Berry; (51) Diane J. McCreodie, DA; (58) Scott Kersteher; (59) Officer Underwood; (60) Inspector A. Wahtola; (61) Warden A. Allen; (62) Inspector J. Rhoades; (66) Deputy Warden W. Foy; (67) M. Anderson; (68) N. Culberson, RUM; (69) Warden Tom O'Bell Winn; (70) Clock; (71) Classification Director Witman; (15) Officer Myer, (20) Officer Mims; (21) Officer Williamson; (19) Officer Jackson; (30) Officer Brewso; (38) Nurse Practitioner Hendrick; (39) Mary A. Gratz; (54) Carla Grows; (78) Officer Kalpesh; (79) Officer Martinez; (81) Officer Dameh; (82) Officer Klinco; (80) Tommy Robbins, LPN; (10) PC Christine Bleecher; (11) Inspector Chandler Cheeks; (56) Raymond Barnes; (57) C. Ozukise; (7) Sergeant J. Brown; (22) Warden Bush; (12) Officer

A. Swisher; (4) Laura Hogan; (52) A. Hawkins; (76) Librarian Lousous; (77) Librarian Bell; (44) Amy M. Luchtman; (47) Marjorie Nichols; (64) Margie Nichols (64); (63) D. Adams; (45) Alison Girard; (46) Susan G. Smith; (50) Paige E. Hillier, RN; (65) Curtina J. Jones; and (55) Mr. Watson. The complaint also names as John Does the following unknown persons identified only by their titles: Quartermaster, Medical Health Providers, or "Staff," as well as "Michigan Department of Corrections Medical Health Providers." All of those pseudonymously named defendants also will be dismissed.

The following defendants survive initial screening: (1) Hanna Saad, (2) Aleksandra Wilanowski, (3) Laura Fry, (31) Derek Rosen, (32) Jill Lawrence; (33) Mary Closser; (34) Richard Baish; (35) Michael Bennett, (40) Mental Health Director Designee Jennifer LNU, (53) Disease Specialist Hutchinson, and (55) Instructor Rumbus.

I.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). A complaint is frivolous if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Denton v. Hernandez*, 504 U.S. 25, 32 (1992). "A complaint lacks an arguable basis in law or fact if it . . . is based on legal theories that are indisputably meritless." *Brown v. Bargery*, 207 F.3d 863, 866 (6th Cir. 2000) (citing *Neitzke*, 490 U.S. at 327-28).

The Prison Litigation Reform Act requires the Court to screen for colorable merit every prisoner complaint filed against a state or governmental entity. 28 U.S.C. § 1915A(a) ("The court

shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."); *Wershe v. Combs*, 763 F.3d 500, 504 (6th Cir. 2014) (citation omitted).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). A private entity which performs a traditional state function under contract to the state, "such as providing medical care to prison inmates[,]" also "may be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (citing *West v. Atkins*, 487 U.S. 42, 54 (1988)).

The plaintiff must establish the liability of each individual defendant by that person's own conduct. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and legal conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a

"'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twiqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

A *pro se* civil rights complaint is to be construed liberally. *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Court must also accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton*, 504 U.S. at 33. Consistent with *Twombly* and *Iqbal*, the Sixth Circuit has observed that "[d]espite the leniency afforded to . . . *pro se* litigant[s], however, our standard of review requires more than the bare assertion of legal conclusions, and thus the complaint 'must contain either direct or inferential allegations respecting all the material elements' to recover under some viable legal theory." *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (quoting *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)). Neither the Supreme Court nor other courts "have been willing to abrogate basic pleading essentials in *pro se* suits." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (citing, *inter alia*, *Haines*, 404 U.S. at 521).

II.

Of the individuals named as defendants in the caption to the Complaint, the plaintiff asserts no allegations against thirty-three of them. While a *pro se* litigant receives "indulgent treatment," *Hill*, 630 F.3d at 471, courts are not obligated to "conjure up unplead allegations." *Wells*, 891 F.2d at 594 (6th Cir. 1989) (citing *Merritt v. Faulkner*, 697 F.2d 761 (7th Cir.) *cert. denied*, 464 U.S.

986 (1983)); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("it is still necessary to include some 'well-pleaded factual allegations' to support the claim.") (quoting *Iqbal*, 129 S. Ct. at 1950).

A. Defendants With No Allegations of Personal Involvement

Because the plaintiff fails to allege any facts against the following defendants to demonstrate liability, the claims against them must be dismissed: (5) Richard D. Russell; (6) R. Harbough, RN; (8) Joshua A. Buskirk, PA; (9) Kathleen M. Leffingwell, RN; (13) Cresenberry, RN; (14) Officer Mulligan; (16) Sergeant Schafear; (17) Howe, PC; (23) Pieron, RUM; (25) Officer Duncan; (26) Officer Balmes; (27) Deputy Warden B. Carl; (28) Walworth, RUM; (29) Kim Cargor; (36) Linda Bresette; (37) J. Baker; (41) Irina Filksman; (42) Tanisha Smith-Allen; (43) Nicholas Mitchell; (48) Angela Childs; (49) Melissa M. Berry; (51) Diane J. McCreodie, DA; (58) Scott Kersteher; (59) Officer Underwood; (60) Inspector A. Wahtola; (61) Warden A. Allen; (62) Inspector J. Rhoades; (66) Deputy Warden W. Foy; (67) M. Anderson; (68) N. Culberson, RUM; (69) Warden Tom O'Bell Winn; (70) Clock; (71) Classification Director Witman. Similarly, the complaint pleads no specific facts suggesting any personal involvement in any unconstitutional acts by the John Doe defendants named by their titles only as Quartermaster, Medical Health Providers, or "Staff," and they must be dismissed as well. The complaint also contains no specific factual allegations relating to the collective entity named as "Michigan Department of Corrections Medical Health Providers."

B. Conduct That Does Not Comprise Any Constitutional Violations

Section 1983 "merely provides a 'method for vindicating federal rights elsewhere conferred.'" *Johnson v. Ward*, 43 F. App'x 779, 781–82 (6th Cir. 2002) (citing *Albright v. Oliver*, 510 U.S. 266, 271 (1994). "The first step in any such claim is to identify the specific constitutional

right allegedly infringed." *Albright*, 510 U.S. at 270 (citations omitted). Accordingly, any claimed constitutional violation must be based upon actively unconstitutional behavior. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The allegations against the defendants listed below do not plausibly suggest any constitutional violations or unconstitutional behavior, and thus fail to state a claim upon which relief may be granted:

- Officer Myer (15), Officer Mims (20), and Officer Williamson (21), who are alleged merely to have placed the plaintiff in his cell. (Compl. at 20.)

- Officer Jackson (19), about whom the plaintiff alleges only that he informed Jackson about a grievance and later submitted a grievance form to him. (*Id*. at 15, 25.)

- Officer Brewso (30), about whom the plaintiff only alleges that the the plaintiff told Brewso he wanted to return to his cell. (*Id*. at 13.)

- Nurse Practitioner Hendrick (38) who it is alleged merely reviewed the plaintiff's chart and did nothing. (*Id*. at 21.)

- Mary A. Gratz (39), about whom the plaintiff alleges only that he sent Gratz a kite asking to speak to the doctor. (*Id*. at 21.)

- Carla Grows (54), who merely was present at an interview. (*Id*. at 24.)

The following group of defendants were not listed in the caption of the pleading but appear in the body of the complaint. As with the defendants listed above, the plaintiff's allegations against the following individuals do not show any unconstitutional conduct:

- Officer Kalpesh (78) was told by a librarian to make the plaintiff leave the library. (Compl. at 17.)

- Officer Martinez (79) added an attorney's telephone number to the plaintiff's phone list. (*Id*. at 20.)

- Officers Dameh (81) and Klinco (82) received grievances from the plaintiff. (*Id*. at 25.)
- Tommy Robbins, LPN (80) was listed on a page labeled "Denial of medical care," but the plaintiff provides no further allegations against him. (*Id*. at 23.)

The plaintiff's allegations against the following defendants describe acts that, although perhaps questionable, do not implicate any constitutional injury entitling the plaintiff to relief. The respective allegations at issue and the bases for dismissal are as follows:

- The plaintiff reported to Inspector Chandler Cheeks (11) that his sexual harassment allegation had leaked to PC Christine Bleecher (10). The plaintiff also reported to Cheeks that he had been the target of retaliation for making a sexual mistreatment report. (Compl. at 15, 24.) The plaintiff fails to state a claim against these defendants, because prison inmates have a diminished expectation of privacy. *United States v. Smith*, 526 F.3d 306, 309 (6th Cir. 2008) (citing *Hudson v. Palmer*, 468 U.S. 517, 525-26 (1984)). As to any privacy protections that may exist in the Prison Rape Elimination Act, 42 U.S.C. § 15602, under which the plaintiff reported the harassment, Congress created no private right of action. *Green v. Martin*, 224 F. Supp. 3d 154, 171 (D. Conn. 2016); *Peterson v. Burris*, No. 14-13000, 2016 WL 67528, at *2 (E.D. Mich. Jan. 6, 2016) (citations omitted).

- The complaint alleges that several defendants improperly created or refused to fix institutional record errors: Barnes, Raymond (56) (security classification); C. Ozukise (57) (parole documents); or lied about a grievance or other issue: Sergeant J. Brown (7); Warden Bush (22); Officer A. Swisher (12) (unjustified misconduct ticket). However, "[f]alse accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are subsequently adjudicated in a fair hearing." *Cromer v. Dominguez*, 103 F. App'x 570, 573 (6th Cir. 2004) (citing *Cale v. Johnson*, 861

F.2d 943, 953 (6th Cir.1988) (Nelson, J., concurring); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir.1986); *see also Smith v. Mensinger*, 293 F.3d 641, 653–54 (3d Cir. 2002).

- The complaint alleges that an unnamed prison psychologist told the plaintiff he was dying of HIV/AIDS and threatened him with involuntary treatment. But "[v]erbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief." *Wingo v. Tennessee Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)).

## C. Access to Courts Claims

The plaintiff's allegations against the following group of defendants could be construed as attempting to state claims of interference with his access to the courts. However, none of the plaintiff's allegations against these defendants state a claim upon which relief may be granted. These defendants and the allegations against them are as follows:

- A. Hawkins (52), who the plaintiff alleged merely withheld grievance forms. (Compl. at 16.)

- Librarian Lousous (76) who allegedly denied the plaintiff photocopies of documents for his active court appeal (*id*. at 27, 26); and Librarian Bell (77), who shredded a grievance witness list (*id.*).

- Amy M. Luchtman (44), who allegedly withheld medical records to cover up medical negligence and involuntary treatment (*id*. at 23); Marjorie Nichols (47), and Margie Nichols (64) (same, medical negligence) (*id*.); D. Adams (63) (same, medical malpractice) (*id*. at 21).

The First Amendment entitles prison inmates to a right of access to the courts, but that right "extends to direct appeals, habeas corpus applications, and civil rights claims only." *Rodgers v.*

*Hawley*, 14 F. App'x 403, 408-09 (6th Cir. 2001) (citing *Thaddeus–X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999)). To state a claim for violation of the right to access the courts, a plaintiff must allege actual injury, meaning that the conduct or condition complained of "hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Examples of actual injury "include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005) (citing *Jackson v. Gill*, 92 Fed. App'x 171, 173 (6th Cir. 2004)); *see also Lewis*, 518 U.S. at 351.

The right of access to the courts includes access to the grievance process. *Rodgers*, 14 F. App'x at 408. However, a plaintiff cannot show the necessary actual injury unless the grievance raises a civil rights or other covered action, *id.* at 409, and that claim is nonfrivolous. *Lewis*, 518 U.S. at 353. A plaintiff may not "invite[] speculation" regarding how the defendants' actions "deprived him of meaningful access to the courts." *Rodgers*, 14 F. App'x at 409.

Allegations of a "cover-up" or destroyed evidence may present an access violation. *Hunt v. City of Cleveland*, 563 F. App'x 404, 410 (6th Cir. 2014). However, a plaintiff must allege that the opportunity to litigate "a non-frivolous underlying claim" was lost. *Id.* (citing *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013)). In addition, the plaintiff must show that a court remedy is now "unattainable," due to the cover-up. *Id.*

The plaintiff's allegations against Hawkins, Bell, and Loulous fail to state a claim upon which relief may be granted because he has not alleged actual injury, that is, he has not pleaded that he suffered the dismissal of his appeal or was unable to file a civil rights complaint. As in *Rodgers*, the plaintiff invites only speculation regarding any injury related to defendant Hawkins' withholding of grievance forms, or Librarian Bell's destruction of a witness list.

The allegations regarding the destruction of medical records also do not meet the *Hunt* test. An underlying claim of medical malpractice does not support relief, because that cause of action is not a violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Finally, as to his claim of involuntary medical treatment, the plaintiff was able to file this lawsuit and may seek remedies associated with the records destruction with this Court. *See Flagg*, 715 F.3d at 174; *Swekel v. City of River Rouge*, 119 F.3d 1259, 1263–64 (6th Cir. 1997).

### D. Deliberate Indifference and Denial of Medical Care Claims

The plaintiff alleges that he received inadequate health care for pain and other symptoms and forced medication for both mental health treatment and for an incorrect diagnosis of HIV/AIDS. The plaintiff's allegations of deliberate indifference against the one group of defendants are insufficient to state a claim and must be dismissed. However, the case may proceed against others for whom the plaintiff plausibly has alleged personal involvement in possibly unconstitutional involuntary medical treatment.

#### 1. Denial of Treatment

A constitutional claim for the deprivation of adequate medical care "has two components, one objective and one subjective." *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001), *cert. denied*, 537 U.S. 817 (2002)). The objective component requires a plaintiff to show the existence of a "sufficiently serious" medical need. *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

To establish a serious need for medical care, "*Farmer* requires only that 'the inmate show that he is incarcerated under conditions posing a substantial risk of serious harm[,]' so as to avoid 'the unnecessary and wanton infliction of pain.'" *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890,

896 (6th Cir. 2004) (quoting *Farmer*, 511 U.S. at 834). A serious medical need may be demonstrated by a physician's diagnosis mandating treatment or a condition that "is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id*. at 897 (citations omitted).

Establishing the second, subjective, component "requires a plaintiff to 'allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk.'" *Dominguez*, 555 F.3d at 550 (quoting *Comstock*, 273 F.3d at 703). Deliberate indifference requires "more than negligence or the misdiagnosis of an ailment." *Comstock*, 273 F.3d at 703 (citations omitted). Courts evaluating such a claim "distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir.1976)).

"Where a prisoner alleges only that the medical care he received was inadequate, 'federal courts are generally reluctant to second guess medical judgments,' although 'it is possible for medical treatment to be 'so woefully inadequate as to amount to no treatment at all.'" *Id*. (citing *Westlake*, 537 F.2d at 860 n. 5). But "a desire for additional or different treatment does not suffice by itself to support an Eighth Amendment claim." *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (citing *Estelle*, 429 U.S. at 107; *Rhinehart v. Scutt*, 509 F. App'x 510, 513-14 (6th Cir. 2013)) (other citation omitted).

The following four defendants must be dismissed because the plaintiff's allegations of deliberate indifference against them do not meet the *Farmer* standard of demonstrating that the plaintiff had a "sufficiently serious" medical need:

- Alison Girard (45), who the plaintiff alleged "deprived [him] of treatment" with no further information. (Compl. at 21.)

- Susan G. Smith (46), who failed to treat the plaintiff's severe headache accompanied by shortness of breath and blurred vision. (*Id*. at 23.)

- Paige E. Hillier, RN (50), who withheld medications for headache. (*Id*.)

- Curtina J. Jones (65), who withheld medications for headache and nosebleed. (*Id*.)

None of the conditions complained of rise to a standard of a "serious medical need," requiring a doctor's diagnosis or care, *Blackmore*, 390 F.3d at 897, nor do they suggest "substantial risk" to the plaintiff. *Dominguez*, 555 F.3d at 550.

2. Involuntary Treatment

On the issue of coerced or forced treatment, "[u]nder the Fourteenth Amendment's Due Process Clause, a prisoner 'possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs.'" *Kramer v. Wilkinson*, 302 F. App'x 396, 400 (6th Cir. 2008) (per curiam) (quoting *Washington v. Harper*, 494 U.S. 210, 221-22 (1990)). Although "the therapeutic benefits of antipsychotic drugs are well documented, it is also true that the drugs can have serious, even fatal, side effects." *Harper*, 494 U.S. at 229.

The prisoner's liberty interest must be balanced by legitimate penological interests, that is, "prison safety and security." *Kramer*, 302 F. App'x at 400 (quoting *Harper*, 494 U.S. at 223). Thus, "the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Harper*, 494 U.S. at 227. But because Due Process applies, a prisoner is entitled to "certain essential procedural protections," such as "notice,

the right to be present at an adversary hearing, and the right to present and cross-examine witnesses." *Id*. at 235, 236.

In both *Harper* and *Kramer*, the courts affirmed the involuntary administration of psychotropic meds, because the prisoners received adequate procedural opportunities to challenge the administration of the medication. *See Kramer*, 302 F. App'x at 400 (the prisoner "was afforded a hearing to challenge the medication and given an explanation of why the prison felt he must continue on the medication."); *Harper*, 494 U.S. at 233 (finding "procedural safeguards to ensure the prisoner's interests . . . [a]dequate").

By contrast, the complaint here suggests that the plaintiff was not afforded sufficient process to challenge the administration of medication that he did not want to take, because he alleges that he involuntarily received psychotropic medication between June 17 and 25, 2016, and those dates precede a July 11 hearing at which he was found mentally ill. (Compl. at 21-22) Based on those allegations, the plaintiff plausibly has stated a claim against the following defendants who allegedly personally administered the involuntary treatment: Hanna Saad (1), Aleksandra Wilanowski (2), Laura Fry (3), Derek Rosen (31), Jill Lawrence (32), Mary Closser (33), Richard Baish (34), Michael Bennett (35), Mental Health Director Designee Jennifer LNU (40), and Disease Specialist Hutchinson (53).

### E. Racial Discrimination Claims

Finally, the plaintiff claims that he was denied access to a "VVP" program due to racial discrimination. (Compl. at 26.) He alleges that defendant Rumbus, VVP Instructor (55) and unnamed members of the Administrative Staff denied him a place in the VVP program on the basis of his race. (*Id*.) The plaintiff also names as a defendant Mr. Watson, Program Specialist, who it is alleged merely spoke to the plaintiff about the denial of his grievance. (*Id*.)

Discrimination is prohibited by the Equal Protection Clause of the Fourteenth Amendment, which "commands that no state shall deny to any person within its jurisdiction the equal protection of the laws." *Club Italia Soccer & Sports Org., Inc. v. Charter Twp.*, 470 F.3d 286, 298 (6th Cir. 2006) (internal quotation marks omitted). "To establish a claim for relief under the Equal Protection Clause, a plaintiff must demonstrate that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Id*.

It is well settled that a prisoner has no "right to prison employment or a particular prison job," *Jewell v. Leroux*, 20 F. App'x. 375, 377 (6th Cir. 2001), or by extension, educational programming. *Glover v. Johnson*, 35 F. Supp. 2d 1010, 1012 (E.D. Mich.), *aff'd*, 198 F.3d 557 (6th Cir. 1999). However, "[p]risoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Racial classification in a prison setting, similar to such classification outside prison, is permissible only when it is narrowly tailored to serve a compelling state interest. *See Johnson v. California*, 543 U.S. 499, 505-15 (2005). Thus, generally, despite the lack of a constitutional right to specific jobs or training, the Equal Protection Clause prohibits prison officials from making assignments based on race. *See Walker v. Gomez*, 370 F.3d 969, 973 (9th Cir. 2004); *Black v. Lane*, 824 F.2d 561, 562 (7th Cir. 1987).

The plaintiff's allegations that he was denied a position in the VPP program because of racial discrimination, despite being first on the list for the course, sustain a viable claim for relief against defendant Rumbus. The plaintiff does not, however, plausibly state any claim against defendant Watson, because "[s]ection 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in

a grievance." *Lee v. Michigan Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).  In addition, it is not alleged that Watson personally took any discriminatory action against the plaintiff.  *Taylor*, 69 F.3d at 81.

III.

The plaintiff has failed plausibly to state any claim for relief against numerous defendants named in the complaint, but he has alleged viable claims against several others.

Accordingly, it is **ORDERED** that the plaintiff's claims are **DISMISSED WITH PREJUDICE** as to the following individually named defendants: (5) Richard D. Russell; (6) R. Harbough, RN; (8) Joshua A. Buskirk, PA; (9) Kathleen M. Leffingwell, RN; (13) Cresenberry, RN; (14) Officer Mulligan; (16) Sergent Schafear; (17) Howe, PC; (23) Pieron, RUM; (25) Officer Duncan; (26) Officer Balmes; (27) Deputy Warden B. Carl; (28) Walworth, RUM; (29) Kim Cargor; (36) Linda Bresette; (37) J. Baker; (41) Irina Filksman; (42) Tanisha Smith-Allen; (43) Nicholas Mitchell; (48) Angela Childs; (49) Melissa M. Berry; (51) Diane J. McCreodie, DA; (58) Scott Kersteher; (59) Officer Underwood; (60) Inspector A. Wahtola; (61) Warden A. Allen; (62) Inspector J. Rhoades; (66) Deputy Warden W. Foy; (67) M. Anderson; (68) N. Culberson, RUM; (69) Warden Tom O'Bell Winn; (70) Clock; (71) Classification Director Witman; (15) Officer Myer, (20) Officer Mims; (21) Officer Williamson; (19) Officer Jackson; (30) Officer Brewso; (38) Nurse Practitioner Hendrick; (39) Mary A. Gratz; (54) Carla Grows; (78) Officer Kalpesh; (79) Officer Martinez; (81) Officer Dameh; (82) Officer Klinco; (80) Tommy Robbins, LPN; (10) PC Christine Bleecher; (11) Inspector Chandler Cheeks; (56) Raymond Barnes; (57) C. Ozukise; (7) Sergeant J. Brown; (22) Warden Bush; (12) Officer A. Swisher; (4) Laura Hogan; (52) A. Hawkins; (76) Librarian Lousous; (77) Librarian Bell; (44) Amy M. Luchtman; (47) Marjorie

Nichols; (64) Margie Nichols (64); (63) D. Adams; (45) Alison Girard; (46) Susan G. Smith; (50) Paige E. Hillier, RN; (65) Curtina J. Jones; (55) Mr. Watson.

It is further **ORDERED** that the plaintiff's claims are **DISMISSED WITH PREJUDICE** as to the John Doe defendants named by the following titles and institutional designations: Quartermaster, Medical Health Providers, "Staff," and "Michigan Department of Corrections Medical Health Providers."

It is further **ORDERED** that the plaintiff's remaining claims for improper medical treatment and racial discrimination may proceed against the following defendants **ONLY**: (1) Hanna Saad, (2) Aleksandra Wilanowski, (3) Laura Fry, (31) Derek Rosen, (32) Jill Lawrence; (33) Mary Closser, (34) Richard Baish; (35) Michael Bennett, (40) Mental Health Director Designee Jennifer LNU, (53) Disease Specialist Hutchinson, and (55) Instructor Rumbus.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Date: May 8, 2019

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 8, 2019.

s/Susan K. Pinkowski
SUSAN K. PINKOWSKI

---