UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMEL LEON ROBINSON,

          Plaintiff,          Case No. 4:19-cv-10584

                                    District Judge Stephanie Dawkins Davis

v.                             Magistrate Judge Anthony P. Patti

HANNA SAAD, *et al.*,

          Defendants.

_____/

**ORDER GRANTING DEFENDANTS' MOTION TO STAY DISCOVERY
(ECF No. 63) AND DENYING WITHOUT PREJUDICE PLAINTIFF'S
DISCOVERY MOTION (ECF No. 76), AND MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION TO GRANT THE MEDICAL
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 32)
AND THE MDOC DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT AND TO DISMISS (ECF No. 41), AND TO DENY
PLAINTIFF'S MOTION TO DISMISS PARTIAL SUMMARY JUDGMENT
(ECF No. 55)**

**I.    RECOMMENDATION**:  The Court should **GRANT** the motion for

summary judgment filed by Defendants Hanna Saad, M.D., Aleksandra

Wilanowski, M.D., Laurie Fry, N.P., Mary Closser, D.O., and Craig Hutchinson,

M.D. (collectively the "medical Defendants") (ECF No. 32), **GRANT** the motion

for partial summary judgment and to dismiss based on Eleventh Amendment

immunity filed by Defendants Derek Rosen, Michael Bennett, and Shelley Rambus

(collectively the "MDOC Defendants) (ECF No. 41), and **DENY** Plaintiff's motion

to dismiss partial summary judgment (ECF No. 55).  In addition, pending the
Court's ultimate decision regarding my recommendation on Defendants' summary
judgment motions (ECF Nos. 32 & 41), the MDOC Defendants' motion to stay
discovery (ECF No. 63) is **GRANTED** with regard to the medical Defendants and
Defendants Rosen and Bennett, but not as to Defendants Rambus and Baisch, and
Plaintiff's discovery motion (ECF No. 76) is **DENIED WITHOUT
PREJUDICE**.

## II.   REPORT

### A.   Background

#### 1.   Factual Background

Plaintiff Jamel Leon Robinson (#467859) is currently incarcerated at the
Michigan Reformatory (RMI) in Ionia, Michigan.[1]  As stated by this Court in its
May 8, 2019 opinion and order following its initial screening of Plaintiff's lawsuit:

> Before the Court is the plaintiff's [February 26, 2019] *pro se* civil
> rights complaint filed pursuant to 42 U.S.C. § 1983. . . .  In his
> complaint, the plaintiff names over eighty defendants at four different
> Michigan Department of Corrections locations, all of whom are
> employed by the MDOC or provide medical or mental health care
> under contract.  The complaint alleges a variety of constitutional
> injuries.  Construed liberally, these claims include coerced and
> unwanted medical treatment, sexual harassment, racial discrimination,
> and denial of access to the courts.

---

[1] *See* www.michigan.gov/corrections/, "Offender Search"

(ECF No. 13, PageID.95.)  Ultimately, the Court dismissed all but two of the

claims and eleven Defendants, stating:

> [T]he complaint here suggests that the plaintiff was not afforded
> sufficient process to challenge the administration of medication that
> he did not want to take, because he alleges that he involuntarily
> received psychotropic medication between June 17 and 25, 2016, and
> those dates precede a July 11 hearing at which he was found mentally
> ill.  (Compl. At 21-22)  Based on those allegations, the plaintiff
> plausibly has stated a claim against the following defendants who
> allegedly personally administered the involuntary treatment: Hanna
> Saad (1), Aleksandra Wilanowski (2), Laura Fry (3), Derek Rosen
> (31), Jill Lawrence (32), Mary Closser (33), Richard Baish (34),
> Michael Bennett (35), Mental Health Director Designee Jennifer LNU
> (40), and Disease Specialist Hutchinson (53).
>
> * * *
>
> The plaintiff's allegations that he was denied a position in the
> [Violence Prevention Program] VPP program because of racial
> discrimination, despite being first on the list for the course, sustain a
> viable claim for relief against defendant Rumbus [sic].

(ECF No. 13, PageID.107-108.)[2]

Plaintiff's allegations related to these two surviving claims appear on pages

21-22 and 26 of his complaint.  (ECF No. 1, PageID.21-22, 26.)  Specifically,

---

[2] As of the writing of this report and recommendation, it does not appear as if
Defendants Jill Lawrence and Jennifer LNU have been served, and the Clerk's
Office has denied Plaintiff's request for entry of default against them.  (ECF Nos.
61 & 62.)  Additionally, Defendant Richard Baisch, represented by counsel who
filed his appearance with the Court only recently on June 15, 2020 (ECF No. 77),
has filed a motion to dismiss pursuant to Fed. R. Civ. P. 4 and 12(b)(6) (ECF No.
74), in which he asserts that he was never properly served (ECF No. 74,
PageID.856).  That motion will be decided under separate cover as I will discuss
later in this report, as will Plaintiff's still-pending motion for default judgment as
to Defendants Baisch, Jennifer LNU, and Jill Lawrence (*see* ECF No. 59).

Plaintiff alleges that the medical Defendants forcefully administered psychotropic and other medications to him between June 17 and 25, 2016, and that a panel at the Woodland Correctional Facility (WCC), which included Defendants Closser, Baish, and Bennett, did not diagnose him as mentally ill until July 11, 2016.  (ECF No. 1, PageID.21.)  Further, he alleges that VPP instructor Defendant Rambus discriminated against him by denying him a place in the VPP program, despite his placement at the top of the admissions list.  (ECF No. 1, PageID.26.)

      **2.**    **Instant Motions**

          **a.**    **The medical Defendants' motion for summary judgment**

On February 4, 2020, the medical Defendants (Saad, Wilanowski, Fry, Closser, and Hutchinson) filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56, in which they assert, citing to the attached grievance report (ECF No. 32-1), that only one grievance (RGC-18-04-0750-28e) contains complaints of improper medical treatment, and does not serve to exhaust the remaining involuntary medical treatment claim against them (ECF No. 32, PageID.175-179.)[3]

---

[3] On June 24, 2020, after already filing his motion to dismiss pursuant to Fed. R. Civ. P. 4 and 12(b)(6) (ECF No. 74), Defendant Baisch concurred (ECF No. 80) in the medical Defendants' motion for summary judgment (ECF No. 32), requesting that the Court grant

> Co-Defendants, Hanna Saad, M.D., Aleksandra Wilanowski, M.D., Laurie Fry, N.P., Mary Closser, D.O., and Craig Hutchinson, M.D.'s Motion for Summary Judgment for Failure to Exhaust Administrative

Plaintiff's unsworn response in opposition, filed on March 11, 2020, is very

difficult to comprehend, but largely addresses the merits of his claims, including

some of those previously dismissed by the Court (*see* ECF No. 13), as opposed to

the medical Defendants' specific summary judgment arguments.  (ECF No. 43,

PageID.266-268.)  However, with regard to exhaustion, Plaintiff asserts that: (1)

his grievance complaining of improper medical treatment (RGC-18-05-0973-12B)

was re-labeled RGC-18-04-0750-28e in an attempt to conceal the malicious actions

of prison officials; (2) total exhaustion of administrative remedies is no longer

necessary as exhaustion is now an affirmative defense; (3) he believed no further

action was necessary for his grievances because the matter was put in the hands of

the medical department; (4) a summary judgment motion should fail where there is

no evidence that a correctional facility's grievance policy provides a procedure for

appealing a response; and (5) "The Last exhaustion of plaintiff grievance was

mailed 1/7/2019 according to MDOC prisoner Step III grievance report plaintiff

filed a complaint 02/26/2019 which is 30 days well after all remedies of MDOC

officials was closed and mailed out.  Plaintiff Complaint is valid according to

PLRA Exhaustion of Administrative Remedies."  (ECF No. 43, PageID.474-480.)

---

Remedies, and pursuant to this Concurrence/Joinder, also dismiss
Defendant, Richard Baisch, and provide any and all such other relief
as the Court deems just and equitable.

(ECF No. 80, PageID.950.)

Further, he states, "Plaintiff bring opposing motion based entirely on Defendant's are protected bye [sic] the constitutional rights and amendaments [sic] that they've violated claims should be remanded for court's enlightment [sic] of corporal punishment."  (ECF No. 43, PageID.469.)

In their March 25, 2020 reply, the medical Defendants point out that Plaintiff's response discusses claims that did not survive the Court's initial screening of the case, and that Plaintiff failed to produce evidence that he exhausted his remaining and limited involuntary medical treatment claim against them.  (ECF No. 49, PageID.521-522.)

### b.    The MDOC Defendants' motion for partial summary judgment and to dismiss

On March 10, 2020, the MDOC Defendants (Rosen, Bennett, and Rambus) filed their own motion for partial summary judgment pursuant to Fed. R. Civ. P. 56(a) and to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  (ECF No. 41.) Consistent with the medical Defendants, they cite to grievance RGC-18-04-0750-28e and assert that Defendants Rosen and Bennett are entitled to summary judgment because Plaintiff failed to exhaust the remaining involuntary medical treatment claim against them, but concede, citing to grievance SRF-18-07-0682-29z included in the Step III grievance report attached to their motion, that Plaintiff exhausted his remaining racial discrimination claim against Defendant Rambus. (ECF No. 41, PageID.333, 339-342.)  However, the MDOC Defendants assert that

Rambus, along with Rosen and Bennett, are entitled to dismissal on the basis of

immunity stating:

> [They] are either current or former State of Michigan employee[s]
> who at all times acted in their official capacities.  The State of
> Michigan has not consented to suit and MDOC Defendants enjoy
> Eleventh Amendment immunity in their official capacities.

(ECF No. 41, PageID.342-343.)

Plaintiff filed his response (ECF No. 53) and accompanying declaration

(ECF No. 56)[4] on April 7, 2020, although neither was docketed by the Court until

May 4, 2020, as a result of mailing delays associated with the COVID-19

pandemic.  But beyond listing what he believes to be disputed factual issues (ECF

No. 53, PageID.534-537), he entirely fails to address the MDOC Defendants'

threshold exhaustion argument, and only cursorily addresses immunity (*see* ECF

No. 53, PageID.535, 539-542.)  Instead, Plaintiff addresses these arguments in

what he has titled a motion for dismissal of partial summary judgment based on

exhaustion and immunity (ECF No. 55), also filed on April 7, 2020, and docketed

May 4, 2020.[5]  In what is essentially an unauthorized second response to the

---

[4] In compliance with 28 U.S.C. § 1746(2) governing unsworn declarations,
Plaintiff states, "I declare under Penalty of Perjury that the foregoing is true and
correct[.]"  (ECF No. 56.)

[5] In addition, Plaintiff filed with the Court a one sentence "request" for dismissal of
ECF Nos. 32 and 41 stating, in its entirety, "Fed. R. Civ. P Rule 56(F).  A court
should not grant summary Judgment against a party who has not had an
opportunity to Pursue discovery or whose discovery requests have not been

MDOC Defendants' motion for summary judgment,[6] Plaintiff asserts in this

"motion" that exceptions to the exhaustion requirement exist where a prisoner

receives no response to timely grievances or fears retaliation, and that

"Defendant's acted under State and Local Law, immunity is not a option of Relief

with malicious Acts and criminal activity while in official capacity."  (ECF No. 55,

PageID.553-566.)

---

answered *Ingle v. Yelton*, 439 F.3d 181, 186 (4th Cir. 2006)[.]"  (ECF No. 54,
PageID.546.)  However, even were the Court to construe this as a Rule 56(d)
motion to defer Defendants' summary judgment motions (ECF Nos. 32 & 41)
pending discovery, it must fail because Plaintiff did not include an affidavit or
declaration in support of his request.  *See Plott v. Gen. Motors Corp., Packard
Elec. Div.*, 71 F.3d 1190, 1196 (6th Cir. 1995) ("[T]he district court may defer
summary judgment, pending discovery, if the non-movant submits affidavits
stating that 'the party cannot for reasons stated present by affidavit facts essential
to justify the party's opposition.'") (citation omitted).  Moreover, the Court fails to
see what discovery would be helpful on exhaustion and immunity issues and
Plaintiff fails to tell us.  And the Court notes that discovery is frequently stayed
while these types of issues get sorted out.  *See Chavous v. District of Columbia
Financial Responsibility and Management Assistance Auth.*, 201 F.R.D. 1, 2
(D.D.C. 2001) ("A trial court has broad discretion and inherent power to stay
discovery until preliminary questions that may dispose of the case are
determined.") (*quoting Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987)).

[6] Although the Court may deny this "motion" under E.D. Mich. Local Rule
7.1(c)(3) as an unauthorized second response to the MDOC Defendants' motion
for partial summary judgment and to dismiss, I have considered the motion, and it
has not altered my recommendation.  I note also that Plaintiff brings the motion
pursuant to Fed. R. Civ. P. 55, which governs default judgments, and Fed. R. Civ.
P. 62 regarding the stay of proceedings to enforce a judgment (ECF No. 55,
PageID.550), neither of which are relevant here.

In their May 8, 2020 reply to ECF Nos. 53, 54, and 55, the MDOC

Defendants argue that: (1) Plaintiff's response (ECF No. 53) fails to address

exhaustion or immunity and references alleged incidents and claims not before the

Court; (2) the grievances attached to Plaintiff's motion to dismiss (ECF No. 55) do

not serve to exhaust his remaining claims against them; and (3) to the extent

Plaintiff suggests they are not entitled to Eleventh Amendment immunity because

they engaged in malicious and criminal acts in their official capacities, Plaintiff's

"claims are conclusory and entirely unsupported."  (ECF No. 71, PageID.844-847.)

### c.    Discovery motions

Finally, also before the Court are the MDOC Defendants' motion to stay

discovery pending resolution of their motion for partial summary judgment (ECF

No. 63), and Plaintiff's motion regarding failure to make disclosures or to

cooperate in discovery and for sanctions (ECF No. 76), filed May 28, 2020, but not

docketed by the Court until June 15, 2020, again as a result of COVID-19

pandemic mailing issues.  For their motion to stay discovery pursuant to Fed. R.

Civ. P. 26(b)(2), with which the medical Defendants and Defendant Baisch concur

(*see* ECF Nos. 75 & 79), the MDOC Defendants acknowledge that they received

Plaintiff's discovery requests on May 4, 2020, but argue that, for efficiency

purposes, the Court should stay discovery pending resolution of their dispositive

motion (ECF No. 63, PageID.742, 749-751).  And in Plaintiff's discovery motion,

to which Defendant Baish responded in opposition on June 19, 2020 (ECF No. 78),[7] Plaintiff appears to assert essentially that Defendants failed to respond to his discovery requests, despite admitting that he exhausted his discrimination claim against Defendant Rambus, and requests that the Court both decline to stay discovery and award sanctions.  (ECF No. 76, PageID.924-925, 934-938.)  He brings the motion pursuant to Fed. R. Civ. P. 26(a)(2), 33, 34, and 36.

### B.   Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486

---

[7] In his response, Defendant Baisch asserts, among other arguments, that he was never served with Plaintiff's discovery requests, "which were allegedly served on or about April 24, 2020, well before counsel for Defendant Baisch first appeared as defense counsel in this case."  (ECF No. 78, PageID.944.)

(6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The nonmoving party "must make an affirmative showing with proper evidence in order to defeat the motion."  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must . . . do more than simply show that there is some metaphysical doubt as to the material facts[.] . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).  In other words, summary judgment is appropriate when the motion "is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case . . . ."  *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

## C. Discussion

### 1. Summary judgment should be granted to all of the defendants for failure to exhaust administrative remedies, except for Defendant Rambus.

#### a. Exhaustion under the PLRA

Under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e *et seq.*, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Congress enacted the provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203-04 (2007).  Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits[.]" *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citation omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211.  The prison's grievance process determines when a prisoner has properly exhausted his or her claim.  *Id*. at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of

proper exhaustion."). Thus, the PLRA requires not only exhaustion, but *proper* exhaustion. *See Woodford*, 548 U.S. at 92 (concluding that if a prisoner fails to file a procedurally proper grievance, he fails to satisfy the PLRA's exhaustion requirement). "[P]roper exhaustion of administrative remedies . . . means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits.)" *Id*. at 90 (quotation marks and citation omitted). As long as the prison "clearly rejects a grievance for a reason explicitly set forth in the applicable grievance procedure, a subsequent § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust." *Burnett v. Howard*, No. 2:09-cv-37, 2010 WL 1286256, at *1 (W.D. Mich. Mar. 30, 2010) (internal quotation marks and citation omitted). That said, a court "is not required to blindly accept the state's application of the procedural rule." *Reeves v. Salisbury*, No. 11-cv-11830, 2012 WL 3206399, at *5 (E.D. Mich. Jan. 30, 2012), report and recommendation adopted in part, rejected on other grounds, 2012 WL 3151594 (E.D. Mich. Aug. 2, 2012).

The prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (citations omitted); *see also Woodford*, 548 U.S. at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction

. . . .").  However, "the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint to add claims that were exhausted after the commencement of the lawsuit, provided that the plaintiff's original complaint contained at least one fully exhausted claim." *Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017).

Finally, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216.  Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA.  *Id.* at 212-13. As such, defendants bear the burden of proof on exhaustion.  *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012) ("A PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies.").

### b.    Grievance procedures at the MDOC

Pursuant to Policy Directive 03.02.130, dated July 9, 2007,[8] the administrative remedies available at the MDOC are as follows.  First, the inmate must attempt to resolve issues with the staff member involved within two business days of becoming aware of a grievable issue.  (ECF No. 32-2, PageID.291, ¶ P; ECF No. 41-2, PageID.350, ¶ P.)  "Dates, times, places, and names of all those involved in the issue being grieved are to be included."  (ECF No. 32-2,

---

[8] This policy directive was superseded on March 18, 2019, but was in effect during the times relevant to Plaintiff's claims.  Thus, all references herein are to the 2007 Policy Directive.

PageID.292, ¶ R; ECF No. 41-2, PageID.351, ¶ R.)  The inmate should receive a response at Step I within fifteen business days after receipt of the grievance.  (ECF No. 32-2, PageID.292-293, ¶ X; ECF No. 41-2, PageID.351-352, ¶ X.)

If the inmate is dissatisfied with the Step I disposition or does not receive a response by ten business days after the due date, he or she may file a Step II grievance using the appropriate form.  (ECF No. 32-2, PageID.293, ¶ BB; ECF No. 41-2, PageID.352, ¶ BB.)  As with Step I, the inmate should receive the Step II response within fifteen business days.  (ECF No. 32-2, PageID.293, ¶ CC; ECF No. 41-2, PageID.352, ¶ CC.)

Similarly, if the inmate is dissatisfied with the Step II response or does not receive a response by ten business days after the due date, the inmate may file a Step III grievance.  (ECF No. 32-2, PageID.294, ¶ FF; ECF No. 41-2, PageID.353, ¶ FF.)  "To file a Step III grievance, the grievant must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form (CSJ-247B), to the Grievance and Appeals Section within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due, including any extensions."  (ECF No. 32-2, PageID.294, ¶ FF; ECF No. 41-2, PageID.353, ¶ FF.)  The matter is fully exhausted after the disposition of the Step III grievance.  *Surles*, 678 F.3d at 455 ("A grievant must undertake all steps of the MDOC process for his grievance to be considered fully

exhausted."). Pertinent to this case, "claims against private employees providing services in a state-run prison are also subject to exhaustion." *Rodriguez v. Stevie*, No. 2:11-CV-515, 2013 WL 1194720, at *1 (W.D. Mich. Mar. 22, 2013). *See also Bonga v. Abdellatif*, Case No. 2:16-cv-13685, 2017 WL 9802708, at *4-7 (E.D. Mich. Dec. 11, 2017).

### c.    Analysis

For the reasons that follow, the Court should conclude that the medical Defendants (Saad, Wilanowski, Fry, Closser, and Hutchinson) as well as Defendants Rosen and Bennett are entitled to summary judgment.

Again, the only claim remaining against these Defendants is that Plaintiff was not afforded sufficient process to challenge their alleged involuntary administration of medication between June 17 and 25, 2016, prior to the July 11 hearing at which Plaintiff was diagnosed as mentally ill. (ECF No. 13, PageID.107-108; *see also* ECF No. 1, PageID.21-22, 26.) And, as Defendants assert, a review of the grievance reports attached to their motions for summary judgment (ECF Nos. 32-1 & 41-3) reveals no grievances complaining of the involuntary administration of medication or naming any of the above Defendants, let alone any grievances at all from 2016.

The only grievance directly related to medical care included in the reports,[9] which provide a comprehensive list of the grievances Plaintiff has pursued through Step III since January 2013, is RGC-18-04-0750-28e, originally labeled RGC-18-040-0750-12E1.  (ECF No. 32-1, PageID.229-239; ECF No. 41-3, PageID.404-414.)  However, as Defendants also assert (ECF No. 32, PageID.177-179; ECF No. 41, PageID.339-342), no reasonable factfinder could conclude this grievance serves to exhaust Plaintiff's remaining involuntary medical treatment claim against them.

First, Plaintiff listed in RGC-18-04-0750-28e incident dates of April 11 and 12, 2018, nearly two years after the allegations related to his remaining involuntary medical treatment claim.  (ECF No. 32-1, PageID.232; ECF No. 41-3, PageID.407.)  Second, Plaintiff did not name any of the relevant Defendants at Step I of the grievance, or any specific individuals at all.  (ECF No. 32-1, PageID.229-239; ECF No. 41-3, PageID.404-414.)  Third, Plaintiff complained at Step I that he received inconsistent mental illness diagnoses (ECF No. 32-1, PageID.232; ECF No. 41-3, PageID.407), not that he was forced to take any psychotropic or other medications.  He did state in his Step III appeal: "My complaint is I've been diagnos[ed] with a mental illness and place[d] on

---

[9] Plaintiff does tangentially mention his medical care in RGC-18-05-0973-12B, but it is also from 2018, and complains mostly of a Freedom of Information Act (FOIA) violation.  (ECF No. 32-1, PageID.206-210.)

medication.  I have been diagnos[ed] with a medical illness communicable disease

place[d] on medication and now I don't have anything."  (ECF No. 32-1,

PageID.230; ECF No. 41-3, PageID.405.)  However, as provided above, MDOC

policy requires that prisoners include the "[d]ates, times, places, and names of all

those involved in the issue being grieved" in their *initial grievance*.  (ECF No. 32-

2, PageID.292, ¶ R; ECF No. 4-12, PageID.351, ¶ R); *see also Reed-Bey v.*

*Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010); *Dykes v. Fuller*, No. 18-11528,

2019 WL 6170868, at *3 (E.D. Mich. Aug. 7, 2019), *report and recommendation*

*adopted*, No. 18-cv-11528, 2019 WL 4744433 (E.D. Mich. Sept. 30, 2019)

("'[P]laintiff cannot raise a new issue in a grievance appeal and have it be deemed

exhausted, unless the MDOC proceeded to address that new claim on the merits.'")

(citation omitted).

　　　　Moreover, this grievance cannot serve to exhaust Plaintiff's involuntary

medical treatment claim because it was rejected at Step III as untimely (ECF No.

32-1, PageID.229; ECF No. 41-3, PageID.404), *see Woodford*, 548 U.S. at 92

(concluding that if a prisoner fails to file a procedurally proper grievance, he fails

to satisfy the PLRA's exhaustion requirement), and Plaintiff provides no valid

explanation for this tardiness.  He does state generally throughout his summary

judgment filings that a summary judgment motion based on exhaustion should fail

where there is no procedure for appealing a grievance response (ECF No. 43,

PageID.478-479), where no response is provided, or where a prisoner fears retaliation (ECF No. 55, PageID.554, 558-559, 563), and that he believed no further action was necessary for his grievances because the matter was put in the hands of the medical department (ECF No. 43, PageID.478-479), but fails to indicate, in either his arguments or through the production of evidence, that he should be exempted from the exhaustion requirement on any of these bases. *See Lee*, 432 F. App'x at 441 ("The nonmovant must . . . do more than simply show that there is some metaphysical doubt as to the material facts[.] . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).  Nor does Plaintiff explain how the re-labeling of a grievance would affect his ability to properly exhaust his involuntary medical treatment claim.

Additionally, the documents attached to Plaintiff's various filings fail to demonstrate exhaustion.  *See Wrench, LLC*, 256 F.3d at 453 ("Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'") (citation omitted).  In his response to the medical Defendants' summary judgment motion, Plaintiff attached only letters from various organizations sent in response to his complaints of sexual abuse, a claim that did not survive the Court's initial screening (ECF No. 13, PageID.101,

109-110), and discrimination (ECF No. 43, PageID.482-488), as well as two index

pages from his grievance report (ECF No. 43, PageID.489-490.)  And to his

motion for dismissal of partial summary judgment, Plaintiff attached the two

grievances related to the VPP program and inconsistent mental health diagnoses

discussed by Defendants in their motions for summary judgment, as well as two

additional grievances unrelated to the remaining claims in this lawsuit.

Accordingly, the Court should conclude that the medical Defendants and

Defendants Rosen and Bennett are entitled to summary judgment because, even

viewing the evidence in a light most favorable to Plaintiff, no reasonable jury

could conclude that he exhausted his involuntary treatment claim against them, and

dismiss them from the lawsuit.[10]  The Court acknowledges Defendant Baisch's

newly-filed (June 24, 2020) concurrence (ECF No. 80) in the medical Defendants'

motion for summary judgment (ECF No. 32), but finds that he must make these

arguments himself, as failure to exhaust administrative remedies is an affirmative

defense, *Jones*, 549 U.S. at 216, and Plaintiff should have an adequate opportunity

to respond to the argument as to Defendant Baisch specifically.  Accordingly, on or

before **Monday, July 13, 2020**, Defendant Baisch may withdraw his June 10, 2020

---

[10] Further, to the extent Plaintiff argues in his response to the medical Defendants'
motion to dismiss that he is entitled to summary judgment (*see* ECF No. 43,
PageID.469), the Court should deny that request for the same reasons.

motion to dismiss (ECF No. 74), and re-file the motion to include an exhaustion argument.  Plaintiff need not file a response to Defendant Baisch's original motion to dismiss (ECF No. 74) until after the deadline for withdrawing and re-filing has expired.  A scheduling order from the Court in that regard will be forthcoming.

In contrast, the Court should find that Defendant Rambus is not entitled to summary judgment because the MDOC Defendants concede that Plaintiff exhausted his racial discrimination claim against Defendant Rambus, citing to SRF-18-07-1682-29Z.  (ECF No. 41, PageID.341-342; *see also* ECF No. 41-3, PageID.386-393.)  Upon review of that grievance, I see no reason to conclude otherwise.  However, as discussed more fully below, Defendant Rambus, as well as Defendants Rosen and Bennett, are entitled to Eleventh Amendment immunity to the extent sued in their official capacities.[11]

> ### 2.   The MDOC Defendants are entitled to Eleventh Amendment immunity to the extent sued in their official capacities

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true."  *Keys v. Humana, Inc.*, 684 F.3d 605,

---

[11] The medical Defendants do not argue immunity in their summary judgment motion or reply brief and, regardless, are all entitled to summary judgment on the basis of exhaustion.

608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The Eleventh Amendment applies to a suit brought against a state by one of its own citizens. *Ex Parte Young*, 209 U.S. 123 (1908). The Eleventh Amendment describes the contours of sovereign immunity, providing that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. This means that "[t]he Eleventh Amendment bars § 1983 suits against a state, its agencies, and its officials sued in their official capacities for damages." *Cady v. Arenac Cty.*, 574 F.3d 334, 342 (6th Cir. 2009). These officials include MDOC officials. *McCoy v. State of Mich.*, 369 F. App'x 646, 653 (6th Cir. 2010)

23

("Because sovereign immunity extends to 'state instrumentalities,' and the MDOC is 'an arm of the State of Michigan,' the MDOC is entitled to sovereign immunity on the § 1983 claim as well." (citations omitted)).

The MDOC Defendants assert that each is either a former or current MDOC employee (ECF No. 41, PageID.332 n. 3, 343), which Plaintiff does not dispute, and the State has not consented to suit. And Plaintiff's only argument, unsupported by any meaningful explanation or evidence, is that Eleventh Amendment immunity does not apply to the MDOC Defendants' "malicious and criminal activity while in official capacity." (ECF No. 55, PageID.560.) Elsewhere he very generally describes them as "malicious acts…done in there [sic] official capacity or individual capacity while in State authority occupation." (ECF No. 55, PageID.564) (capitalization standardized). Thus, to the extent Plaintiff sues the MDOC Defendants in their official capacities for damages (*see* ECF No. 1, PageID.2-6, 29-34), they are immune from suit.

### 3. Discovery motions

Pending the Court's ultimate decision regarding my recommendation on Defendants' summary judgment motions (ECF Nos. 32 & 41), the MDOC Defendants' motion to stay discovery (ECF No. 63) is **GRANTED** with regard to the medical Defendants (Saad, Wilanowski, Fry, Closser, and Hutchinson) and Defendants Rosen and Bennett, but not Defendants Rambus, as Plaintiff's claim

against him has survived summary judgment, or as to Baisch.[12]  Notwithstanding

Defendant Baisch's concurrence in the MDOC Defendants' motion to stay

discovery (ECF No. 79), whether discovery should proceed as to Defendant Baisch

pending resolution of his dispositive motion is more properly the subject of his

own separate motion, also to be filed on or before **Monday, July 13, 2020**.

Further, Plaintiff's motion regarding failure to make disclosures or to cooperate in

discovery and for sanctions (ECF No. 76) is **DENIED WITHOUT PREJUDICE**,

as the scope of discovery will necessarily be altered by the Court's dismissal of

defendants and Plaintiff's motion lacks specificity as to what discovery was

allegedly withheld.  *See* E.D. Mich. LR 37.2 ("Any discovery motion filed

pursuant to Fed. R. Civ. P. 26 through 37, shall include, in the motion itself or in

an attached memorandum, a verbatim recitation of each interrogatory, request,

answer, response, and objection which is the subject of the motion or a copy of the

actual discovery document which is the subject of the motion.")  Should discovery

disputes arise in the future, he may bring motions in accordance with Federal Rule

of Civil Procedure 37, the Local Rules of the Eastern District of Michigan,

particularly 37.1 and 37.2, and my Practice Guidelines.

---

[12] As it does not appear that Jill Lawrence and Jennifer LNU have yet been served and are, therefore, not yet parties to the suit, they are not required to comply with any discovery requests.  Thus, the motion to stay is inapplicable to them.  *See Coleman v. Dep't of Rehabilitation and Corrections*, 46 F. App'x 765, 771 (6th Cir. 2002).

**D.     Conclusion**

The Court should **GRANT** the motion for summary judgment filed by

Defendants Hanna Saad, M.D., Aleksandra Wilanowski, M.D., Laurie Fry, N.P.,

Mary Closser, D.O., and Craig Hutchinson, M.D. (collectively the "medical

Defendants") (ECF No. 32), **GRANT** the motion for partial summary judgment

and to dismiss based on Eleventh Amendment immunity filed by Defendants

Derek Rosen, Michael Bennett, and Shelley Rambus (collectively the "MDOC

Defendants) (ECF No. 41), and **DENY** Plaintiff's motion to dismiss partial

summary judgment (ECF No. 55).  On or before **Monday, July 13, 2020**,

Defendant Baisch may withdraw his June 10, 2020 motion to dismiss (ECF No.

74), and re-file the motion to include an exhaustion argument.  Plaintiff need not

file a response to Defendant Baisch's original motion to dismiss (ECF No. 74)

until after the deadline for withdrawing and re-filing has expired.  A scheduling

order from the Court in that regard will be forthcoming.

In addition, pending the Court's ultimate decision regarding my

recommendation on Defendants' summary judgment motions (ECF Nos. 32 & 41),

the MDOC Defendants' motion to stay discovery (ECF No. 63) is **GRANTED**

with regard to the medical Defendants and Defendants Rosen and Bennett, but not

as to Defendants Rambus or Baisch, and Plaintiff's discovery motion (ECF No. 76)

is **DENIED WITHOUT PREJUDICE**.  <u>To be clear, the individual capacity</u>

26

<u>claims against Defendant Rambus for racial discrimination remain alive, and</u>

<u>discovery as to that claim only may proceed at this time</u>.  Further, notwithstanding

Defendant Baisch's concurrence in the MDOC Defendants' motion to stay

discovery (ECF No. 79), whether discovery should proceed as to Defendant Baisch

is more properly the subject of his own separate motion, also to be filed on or

before **Monday, July 13, 2020**.

## III.   PROCEDURE ON OBJECTIONS

### A.   Report and Recommendation

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc*.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

### B.    Order on Discovery Motions

The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen (14) days after being served with a copy of this order within which to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).

**IT IS SO ORDERED.**

Dated: June 26, 2020                    s/*Anthony P. Patti*
                                        Anthony P. Patti
                                        UNITED STATES MAGISTRATE JUDGE